WALTZER, Judge.
STATEMENT OF THE CASE
Masonry Specialist, a former employer of Steven Chaney, filed a 1008 form on 24 December 1997 seeking a determination as to whether Chaney was entitled to farther benefits arising out of a work-related injury sustained in March, 1997. Chaney filed a 1008 claim for continuing benefits on 6 February 1998, and the two matters were consolidated in the Louisiana Office of Workers’ Compensation.
Chaney appeals from a judgment rendered 31 March 1999. The District Workers’ Compensation Hearing Officer found that on 13 March 1997, Chaney, an employee of Masonry Specialist, which was uninsured, was involved in an accident arising out of and within the course and scope of his employment. According to the trier of fact, Chaney failed to carry his burden of proving that he is unable to earn 90% of his pre-accident wages to be entitled to additional Supplemental Earnings Benefits (SEB). There were no reasons for judgment and Chaney did not apply for a new trial. Finding no error in the judgment below, we affirm.
1 ¡.STATEMENT OF FACTS
There is no dispute that on 13 March 1997, Chaney was injured on the job when he dropped a board, fell and hurt his leg and back. Chaney was 32 years old at the time of his injury and was employed full-time as a laborer, assisting in bricklaying. Although his 1008 claim indicates that he fell from scaffolding and hurt his back, in his deposition Chaney admits that he was standing on the ground holding a board when the board slipped, he lost his balance, and fell. His brother, with whom he was working at the time, took him to Mea-dowere’st Hospital’s emergency room at the instruction of the employer. There, Chaney was treated by Dr. Giambelluca. Following Chaney’s emergency room treatment and after he was cleared ortho-pedically, he was referred by Dr. Giambel-luca to Dr. James Todd for persistent back pain. He was treated by Dr. Todd until released at Chaney’s request on 5 August 1997.[1]
Chaney had no previous back injury. Dr. Todd noted in his report of 2 May 1997 that radiographs of the lumbar spine showed no bony abnormalities, the pelvic x-rays were normal, and Chaney had full range of motion. He also noted a normal neurological exam and assessed a lumbar strain of the right paraspinous musculature with the possibility of disc involvement and ordered an MRI. On 20 May 1997, following the MRI report, Dr. Todd concluded that Chaney did not need surgery for a small to moderate herniation at the L-5 S-l level, and should respond to conservative treatment.
According to Chaney’s physical therapist, Sheila Juneau, by the end of July, 1997, he demonstrated poor motivation for daily attendance and for progression with program activities. She found that Chaney demonstrated symptom magnifying behaviors and submaximal effort during *301 testing. She concluded that the major factors limiting his improved functioning were his poorly motivated participation in the work conditioning program and his symptom magnifying behaviors.
Juneau found him capable of occasional bending, squatting and ladder and stair climbing. He was capable of frequent kneeling, crawling, balancing, reaching above shoulder level, sitting, standing, walking and using his right and left feet. He was also capable of continuously (over | s500 times per day) lifting 6 pounds from floor to knuckle height; 8 pounds from 12 inches from the floor to knuckle and from knuckle height to shoulder; and 7 pounds from shoulder height over head. He was capable of frequently (100-500 times per day) lifting 15, 20, 21 and 17 pounds to those respective heights, and of occasionally (1 to 100 times per day) lifting 31, 41, 42 and 38 pounds. He could push and pull 10 pounds continuously, 25 pounds frequently and 50 pounds occasionally, and could carry 6 pounds continuously, 16 pounds frequently and 33 pounds occasionally for a distance of up to 100 feet. This qualified him for lighi/medium to medium work. Juneau noted that Chaney voluntarily curtailed ten of the eleven tests, complaining of subjective pain, although his heart rate either increased only mildly or even decreased during testing. Physical therapist Paulette d’Aquin’s evaluation of Chaney’s non-material and material handling abilities were similar to Juneau’s and placed Chaney in the light/medium to medium category. D’Aquin concluded that Chaney’s major limitations include subjective complaints of low back pain, limited lumbar flexibility and self-limiting behaviors.
The hearing officer, in determining that Dr. Todd was Chaney’s personal choice as physician, found that Chaney was treated by Dr. Todd from May through August, 1997, and that Dr. Todd returned Chaney to lighi/medium work at Chaney’s request, so that Chaney could take an offshore job working for Delta Catering. Furthermore, the officer found that on 11 August 1997, Chaney was given a pre-employment physical by Dr. Joseph R. Serio, and Chaney checked “no” to a question on his pre-employment physical questionnaire asking whether he had any prior workers’ compensation claim or back injury.
At trial, the parties stipulated that at the time of the accident, Chaney was employed by Masonry Specialist and earned $345.91 per week. Assuming he works 52 weeks per year, his annual wage is just under $18,000. The parties stipulated that Masonry Specialist paid Chaney benefits through 31 December 1998.
Chaney testified that he holds an associate degree in physical education from Los Angeles Southwest Community College; a bachelor’s degree in speech communication from Woodworth College and a degree in pharmacy technology from Los Angeles Trade and Technical School. Chaney is a Louisiana State Board of Pharmacy certified pharmacist technician. His work experience included processing financial aid transcripts at Los Angeles |4Southwest Community College; cooking and performing various jobs around campus at Wood-worth College; serving as an Amtrak ticket agent for five years; selling shoes; and working as a G.E. Capital Customer Service representative. He said he “made good money” dealing with the public and with computers and “things of that nature.”
Chaney testified that he returned to New Orleans to help care for his ailing parents. He worked offshore for Delta Catering as a prep cook. He worked for at least two weeks on the water and one week off. Chaney’s brother was working for Masonry Specialist, and Chaney eventually left Delta Catering and took a job with him for five or six weeks, working for Masonry Specialists as a hod carrier, mixing water, carrying bricks, assembling scaffolds and making sure the mortar was mixed and kept wet.
Chaney testified that after his injury he was treated by Dr. Todd and, during that *302 treatment, received physical therapy five days a week for five months. After his release in early August, 1997, he went back to work for Delta Catering and worked offshore until 17 September 1997. Chaney admitted that he lied on his pre-employment application, denying that he had a pending compensation claim or prior back injury. He then concluded he was unable to continue working offshore and told his supervisor on the rig that he was quitting. Chaney admitted that Delta Catering’s separation notice accuses him of harassing a co-employee, but claimed he knew nothing about this claim. He denied that Delta Catering told him he was being fired for having harassed a co-employee.
After Chaney left Delta Catering, he worked for The New Orleans Fairgrounds as a security guard, where he could perform all physical duties required of him with the exception of moving the heavy gates. He quit in November or December 1997 because of the lack of heat in his guardpost booth. He has not worked since then.
On cross-examination, Chaney testified that he has not sought a job as a pharmacy technician, believing he could earn more money offshore. He also claimed that he let his pharmacy license expire. He admitted that in addition to his work as an Amtrak ticket agent he also did supervisory work and worked as a customer service representative for both Amtrak and G.E. Capital. He also sold long distance telephone and cable services from his computer.
IsChaney denied having been employed by Delta Catering during the term of his employment with Masonry Specialist; however, he was presented with the Louisiana Department of Labor’s Unemployment Record showing earnings from Delta Catering in April, May and June of 1997. Although Chaney claimed to have gone to work for Masonry Specialist in December 1996, payroll records show he started on or about 27 February 1997. He also claimed that he did not take a leave of absence from Delta Catering in July, 1997, although his 14 October 1997 application for unemployment benefits claims he worked for Delta Catering from August, 1996 through September, 1997. He was confronted with the same information from his employment application for his Fairgrounds job. According to Chaney’s Fairgrounds application, he earned $11.45 an hour when employed by Delta Catering. Assuming full-time employment, this amounts to $458 per week, or just under $24,000 annually, substantially more than his earnings with Masonry Specialist. Chaney testified that this figure was applicable only as to certain rigs, and that his salary could be as little as $8 an hour.
Chaney’s testimony was also inconsistent as to his reason for having left Delta Catering. On his Fairgrounds application, he said he left because there was no room for advancement, yet he testified that he left because he could not perform the work. Chaney admitted that he lied on the Fair Grounds application as well as the Delta Catering application, and said he was willing to lie if he had to in order to get a job.
Chaney admitted that he had lied to Dr. Serio when he denied having received compensation benefits and denied having had a prior back injury. However, Chaney testified under oath at a previous hearing before the Workers’ Compensation Office that he had told Dr. Serio of his previous back injury.
Chaney’s testimony was also inconsistent concerning his alleged dependents. He testified at trial that he went back to work to provide for the children of his live-in girlfriend. He denied having any dependents on his unemployment application and at his deposition. Furthermore, at trial he said he completed his full term offshore; however, at his deposition, he testified that he did not think he completed the two-week “hitch” because of problems with his back.
*303 When he applied for unemployment benefits in October, 1997, he claimed to be currently available for clerical, communication and offshore work, and claimed to be able to perform his | fiusual offshore duties. This is inconsistent with his claims at trial and in deposition. According to Chaney’s unemployment application, he claims he was discharged on 26 September 1997 because of a “legal case with [his] girlfriend.”
On his Fairgrounds application, Chaney lists his skills as phone skills, knowledge of Windows ’95, supervisory skills, clerical skills and fireman skills. He admitted that since he quit the Fairgrounds job he has not worked and has not done anything to find a job.
Chaney admitted that he was convicted and sentenced to serve time in jail in January 1998 for unauthorized use of a motor vehicle. He also admitted that he was issued a summons to which he did not respond for fighting with his brother in the street. He claimed he was trying to stop a fight between his two brothers.
Regina Patterson, the claims manager, testified that the decision to terminate Chaney’s benefits was made in late December 1998 when it was determined that Chaney had been working offshore for Delta Catering since the first week of August, 1997 at an equal or greater wage than when employed by Masonry Specialist. According to Ms. Patterson, Chaney contacted her in August, 1997 concerning settlement negotiations, and advised her that he was working as a dishwasher offshore, working 12 hour shifts and standing for hours at a time. Her notes of the conversation do not reflect that he was having any physical difficulty performing this job.
STANDARD OF REVIEW
The standard of review for findings of fact by a hearing officer in a worker’s compensation case is “manifest error,” and it is the appellate court’s duty to determine not whether the factfinder’s conclusion was right or wrong, but whether it was reasonable. Where there are two permissible views of the evidence, a factfinder’s choice between them can never be manifestly erroneous. Seal v. Gaylord Container Corp., 97-0688 (La.12/02/97); 704 So.2d 1161, 1164.
FIRST ASSIGNMENT OF ERROR: The trial court erred in failing to find that plaintiff presented a prima facie case of entitlement to SEB.
The causal link between the employee’s illness and work-related duties must be established by a reasonable probability. Once the employee has established the existence of an occupational disease, for his illness to be compensable, the employee who seeks SEB must further establish that the illness is disabling, that is that he meets the criteria for SEB. La.R.S. 28:1031.1(A) and (B); La.R.S. 23:1221; Seal v. Gaylord Container Corp., supra; 704 So.2d at 1165.
Under the provisions of La.R.S. 23:1221(3)(a), an employee is entitled to receive SEB if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case, keeping in mind that workers’ compensation is to be liberally construed in favor of coverage. It is only after the employee sustains that burden of proof that the burden shifts to the employer to prove, also by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer’s community or reasonable geographic region; the amount of wages a person in claimant’s position can be expected to earn in that job, and that an actual position was available for that particular job at the time the claimant received notification of the job’s existence. *304 Actual job placement is not required. Courts should look to the totality of factors related to a realistic appraisal of access to employment. La.R.S. 23:1221(3)(c)(i); Seal v. Gaylord Container Corp., supra, 704 So.2d at 1166-67.
Under the manifest error standard of review, where there are two permissible views of the evidence, the fact-finders choice between them cannot be manifestly erroneous or clearly wrong. Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967 (La.1985) When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict a witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder’s finding is based on its |sdecision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989).
Chaney’s SEB claim is based on his testimony that he could not comfortably perform the duties of his jobs with Delta Catering and The New Orleans Fairgrounds because of his injury. He admitted he has not sought any employment. There is undisputed evidence that Chaney had computer, telephone and communications skills, held an associate degree, a bachelor’s degree and was a certified pharmacy technician. There is ample evidence that Chaney was fit for light/medium to medium physical labor as well. In light of this evidence, and of the many inconsistencies and admitted lies attributable to Chaney, there is support in this record for the hearing officer’s implicit decision to disregard as not credible Chaney’s testimony concerning his disability. The decision of the hearing officer is not manifestly erroneous or clearly wrong.
This assignment of error is without merit.
SECOND ASSIGNMENT OF ERROR: The trial court erred in failing to find that Masonry’s termination of all SEB benefits was arbitrary and capricious.
Because of our disposition of the first assignment of error, this assignment of error is moot.
CONCLUSION AND DECREE
The decision of the Office of Workers’ Compensation is affirmed. All costs of this appeal are assessed against the appellant, Steven Chaney.
AFFIRMED.

. Chaney denied at trial having requested release to return to work for Delta Catering.